Stephen H. Hutchings, ABA #7705026
Adam W. Cook, ABA #0611071
Birch Horton Bittner & Cherot
1127 W. Seventh Avenue
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680

Attorneys for Weatherford U.S., L.P.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WEATHERFORD U.S., L.P., <br><br> Plaintiff, <br><br> vs. <br><br> GREAT NORTHERN ENGINEERING, LLC, <br><br> Defendant. | Case No.: 3:15-CV-_____ (____) |

### COMPLAINT

COMES NOW Plaintiff, Weatherford U.S., L.P. ("Weatherford"), by and through undersigned counsel, Birch Horton Bittner & Cherot, and hereby complains and alleges as follows:

### PARTIES AND JURISDICTION

1. Weatherford is an oil and natural gas service company, organized as a limited partnership under the laws of the State of Louisiana with its principal place of business in Houston, Texas. The general partner in Weatherford is WUS Holding,

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX

CASE NO. 3:15-CV-_____ (____)
PAGE 1 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 1 of 11

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

L.L.C., a limited liability company incorporated and having as its principal place of business the State of Delaware. Weatherford is a citizen of Delaware and Texas for the purposes of diversity jurisdiction.

2. Great Northern Engineering, LLC ("GNE") is a registered professional engineering firm organized as a limited liability company under the laws of the State of Alaska, with its principal place of business in Alaska. GNE is a citizen of the State of Alaska for purposes of diversity jurisdiction.

3. The amount in controversy, as is more fully set forth below, is in excess of $75,000, exclusive of interest and costs.

4. Pursuant to 28 U.S.C. § 1332, complete diversity of citizenship exists between Weatherford and GNE, effectively granting the U.S. District Court for the District of Alaska jurisdiction in this matter.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the substantial part of the events or omissions giving rise to the claims described herein occurred in the State of Alaska.

## GENERAL ALLEGATIONS

6. In the fall of 2008, Weatherford and GNE entered into a written Engineering Services Agreement (the "Contract") for the design of Weatherford's CoRod facility, a fabrication shop to be located in Deadhorse, Alaska. A copy of the Contract is attached hereto as Exhibit A and incorporated herein by reference. The Contract was drafted by GNE. Pursuant to the Contract, GNE was to design a foundation and on it a pre-engineered metal shop building measuring approximately 100 feet wide and 150 feet long, with an eave height of approximately 24 feet.

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 2 OF 11
Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 2 of 11

GNE's structural engineering tasks under the Contract also included the design of an overhead rail system for two cranes, weighing five and ten tons. According to GNE's proposal, which the Contract incorporated, the building foundation was to be steel piling supporting steel grade beams with reinforced concrete bridging the grade beams, and foam between the concrete and the ground.

7. GNE was aware of the use to which the shop would be put by Weatherford. In the Contract, GNE represented that "[t]his foundation system is a design we have used on the slope for more than 30 years and has a proven track record of durability for heavy equipment maintenance and heavy fabrication facilities." GNE estimated that construction of the building would cost over $3 million dollars.

8. The building was constructed as designed and completed in 2009. Consistent with GNE's design, the CoRod facility had soil and fill around the outer, lower edges of the building.

9. In October 2013, Weatherford discovered that the building slab was uneven and sinking. The foundation caused cracking in the concrete and bent ceiling tracks which affected the building's crane system as well as building safety.

10. In early November 2013, Weatherford construction project manager, Theron Richers ("Richers"), contacted GNE's CEO John Riggs, P.E. ("Riggs") and reported the building issues and damage he had observed. Following this initial report, and in recognition of the limited remedial opportunities available during the winter season, Richers corresponded with Riggs again in April 2014, at which time he sent Riggs photographs of the sinking slab.

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX

CASE NO. 3:15-CV-_____ (___)
PAGE 3 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 3 of 11

11. In late April 2014, Riggs responded that the photographs were insufficient, and that a "more in-depth investigation may be needed," one that would require a site visit and the drilling of holes to "see what the ice under the building is doing." Riggs knew and had been aware of piling creep in the Deadhorse area. Immediately the following day, Richers requested that GNE send an employee to Deadhorse to diagnose the building problem.

12. Over the course of the next month, Richers, recognizing the short 2014 construction season, repeatedly attempted to contact Riggs and GNE, to request that GNE send an engineer to the site immediately. Richers received no response from GNE.

13. In late May, Riggs told Richers that GNE should make a site visit, but had no one available to visit the site "due to our work load." A week later, Riggs again responded that an employee from GNE's Palmer office would be available to visit the site soon. Riggs also requested better photographs and suggested that the "integrity of the concrete" may be the issue.

14. Not until mid-June did GNE finally visit the CoRod facility. A week later, Riggs told Richers by email that "[i]t is obvious that the insulation was installed per the design so no issue there."

15. Further attempts by Richers to contact GNE continued unanswered. In early July 2014, Weatherford received notice that it would have a new contact at GNE, acting CEO Dave Korpi, P.E. ("Korpi"). Weatherford received GNE's site survey in late July. In early August 2014, Korpi told Richers that Korpi had met with a structural engineer with arctic foundation experience, and that the two were "planning

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 4 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 4 of 11

a route forward" but that the engineer was out of town. Ten days later, GNE sent a proposal to Weatherford to have GNE perform testing of the slab. Weatherford promptly granted approval for the testing.

16. On September 8, 2014, Korpi forwarded to Richers a report by Andrew Adams, P.E. ("Adams"), a consultant engineer, on Adams' site visit to the CoRod facility and his testing of the concrete. Korpi's email to Richers indicated that he would contact Richers the next day with a proposal and fee estimate for the "next phase of the project."

17. Adams' report found that the foundation settlement and building misalignment were due to thermal transfer into the piling below the building. According to Adams, "[t]he thermal mass of the concrete slab is storing heat energy and slowly transferring that heat into the permafrost below the building. Because of this slow transfer, the piles are sinking."

18. Adams' report recommended a four-phase remediation plan, the first two phases of which included the immediate removal of soil and fill from around the base of the building to allow it to "vent," and the temporary stabilization of the crane rail system. The recommended third phase called for the design and installation of a permanent thermosyphon system, a system Adams reported was "usually designed and installed prior to a building placement." Adams stated that installation of a thermosyphon system subsequent to building construction would be not only challenging to accomplish, but might result in the system being less effective than had it been installed during construction.

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX

CASE NO. 3:15-CV-_____ (____)
PAGE 5 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 5 of 11

19. The fourth phase of Adams' plan called for at least one year of monitoring the foundation before any attempt at adjustment of the building's columns and braces.

20. Adams also noted that components of the building's crane system might need to be replaced once, if not twice, during any remediation process.

21. Adams' report included an estimate for design of the phased remediation alone, and represents GNE's last effort to inspect or diagnose the sinking slab it had designed. The day after Weatherford received Adams' report, Weatherford also received an invoice from GNE charging Weatherford for Adams' site visit in the approximate amount of $10,000. The cost proposal from GNE to perform further analysis and provide recommendations (but not repairs) for the CoRod facility were estimated at $27,745.

## COUNT I
## BREACH OF CONTRACT

22. Plaintiff incorporates by reference paragraphs 1-21 of this Complaint as if fully set forth herein.

23. Weatherford and GNE entered into an enforceable contract in November 2008 when GNE promised to design the CoRod facility, specifically taking into consideration and accommodating for the particular Deadhorse climate and subsurface conditions.

24. In the Contract, GNE promised to "completely familiarize" itself with the subsurface site conditions, and further "agree[d] that design shall recognize and accommodate any particular site condition which Engineer has discovered or should in the exercise of due diligence discover."

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 6 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 6 of 11

25. The Contract further required that GNE "apply professional techniques to reduce risks to a reasonable level," and required that GNE exercise the degree of care normally applicable to a registered professional engineering firm in the performance of site design work as that which is the subject of this Agreement."

26. GNE failed to exercise the degree of care normally applicable to a registered professional engineering firm in the performance of site design work and in so doing wrongfully and materially breached the Contract.

27. GNE's breach directly and proximately damaged Weatherford's building and operations.

28. As a direct and proximate result of GNE's breach of warranty, Weatherford has suffered and will continue to suffer damages, including but not limited to costs and expenses of repairing the CoRod facility, and direct, indirect, general, special and consequential damages resulting from special circumstances within the contemplation of the parties, attorneys' fees, costs and expenses, each in amounts to be proven at trial, but well in excess of $75,000.

## COUNT II
## BREACH OF WARRANTY

29. Plaintiff incorporates by reference paragraphs 1-28 of this Complaint as if fully set forth herein.

30. In the Contract and otherwise, GNE represented and warranted to Weatherford that GNE was qualified to perform and would perform design work for the CoRod facility according to the generally-accepted standards of professional engineering and architectural services for similar work performed within the State of Alaska.

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 7 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 7 of 11

31.     By failing to exercise due care, by failing to conform to the generally-accepted standards of professional engineering and architectural services for similar work performed within the State of Alaska, and by failing to adhere to the design criteria requirements of engineering standards appropriate to an arctic environment, GNE breached express and implied warranties to provide services in accordance with the standard of care and applicable professional standards imposed upon engineers designing in the arctic, and the implied warranties that GNE's work would be done according to the standards of its trade, and that the finished building would be reasonably fit for its intended use.

32.     As a direct and proximate result of GNE's breach of warranty, Weatherford has suffered and will continue to suffer damages, including but not limited to costs and expenses of repairing the CoRod facility, and direct, indirect, general, special and consequential damages resulting from special circumstances within the contemplation of the parties, attorneys' fees, costs and expenses, each in amounts to be proven at trial.

## COUNT III
## PROFESSIONAL NEGLIGENCE

33.     Plaintiff incorporates by reference paragraphs 1-32 of this Complaint as if fully set forth herein.

34.     In the parties' Contract, GNE promised that "its services...shall conform to the generally accepted standards of professional engineering and architectural services for similar work performed within the State of Alaska" and that its work "shall satisfy such standards as are required to comply with the design criteria requirements of engineering standards appropriate to an arctic environment."

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX

CASE NO. 3:15-CV-_____ (____)
PAGE 8 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 8 of 11

35. GNE had a duty to provide services in accordance with the standard of care imposed upon it by Alaska law governing engineers.

36. The work performed by GNE was defective and not in accordance with this appropriate standard of care. GNE did not exercise the reasonable degree of knowledge and skill which is ordinarily possessed by other engineers.

37. GNE's performance was inconsistent with GNE having performed the agreed-upon services diligently and faithfully, and with the skill and prudence ordinarily possessed and observed by others engaged in the same or like employment. GNE's failure proximately caused damage to Weatherford.

38. Weatherford has suffered, and will continue to suffer, damages proximately caused by GNE's negligence, including but not limited to the cost of repairing and replacing GNE's work and other costs which Weatherford has or will incur due to its reliance upon GNE's representation that it could complete the work in a competent fashion.

## COUNT IV
## BREACH OF COVENANTS OF GOOD FAITH AND FAIR DEALING

39. Plaintiff incorporates by reference paragraphs 1-38 of this Complaint as if fully set forth herein.

40. GNE had a contractual duty to provide a design for the CoRod facility that was consistent with Weatherford's needs and which complied with design criteria requirements of engineering standards appropriate to an arctic environment.

41. Because there is an implied-in-law covenant of good faith and fair dealing inherent in the Contract, GNE had a duty to act in good faith towards Weatherford, and to not unfairly deprive Weatherford of the benefit of its bargain.

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 9 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 9 of 11

42. Providing to Weatherford a design for the CoRod facility that GNE knew or should have known was inconsistent with Weatherford's needs and would not perform as Weatherford intended unfairly deprived Weatherford of the benefit of the Contract and is a violation of the implied-in-law covenants of good faith and fair dealing.

43. GNE's subsequent failure to remedy its design flaws unfairly deprived Weatherford of the benefit of the Contract, and is a further violation of the implied-in-law covenant of good faith and fair dealing.

44. GNE's breaches of the implied-in-law covenant of good faith and fair dealing have caused Weatherford damages, the exact amount of which will be proven at time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Weatherford U.S., L.P., prays for the following relief against Defendant, Great Northern Engineering, LLC:

1. For compensatory and consequential damages in an amount to exceed $75,000, the exact amount to be proven at trial;

2. Exemplary damages;

3. Actual attorneys' fees and costs;

4. Pre-judgment and post-judgment interest at the highest allowable rate; and

5. Such other relief as this Court deems just and equitable.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX
CASE NO. 3:15-CV-_____ (___)
PAGE 10 OF 11
Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 10 of 11

DATED this 18 day of February, 2015.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: _____
Stephen H. Hutchings, ABA #7705026
Adam W. Cook, ABA #0611071

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

WEATHERFORD V. GNE
COMPLAINT
F:\507391\1\00430484.DOCX

CASE NO. 3:15-CV-_____ (___)
PAGE 11 OF 11

Case 3:15-cv-00023-TMB   Document 1   Filed 02/18/15   Page 11 of 11